UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE TURNER,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>    Defendant. | No. 2:18-cv-1403 DB<br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge improperly rejected medical opinion evidence.

////

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 9.)

1

For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

On October 7, 2014, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on December 2, 2013. (Transcript ("Tr.") at 24, 63.) Plaintiff's alleged impairments included "right hand is useless due to gunshot," and damages to left ankle tendons. (Id. at 63.) Plaintiff's applications were denied initially, (id. at 121-25), and upon reconsideration. (Id. at 128-32.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on November 29, 2016. (Id. at 42-62.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 42-44.) In a decision issued on March 22, 2017, the ALJ found that plaintiff was not disabled. (Id. at 36.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016. (Exhibit 4D).
>
> 2. The claimant has not engaged in substantial gainful activity since December 2, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: arthritis and ligament tears in left ankle; status post gunshot wound to right hand (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders. The claimant must avoid hazards, such as unprotected heights and moving machinery. The claimant must avoid uneven terrain. He cannot crawl. He can occasionally

////

2

push, pull, handle and finger with the dominant right upper extremity. The claimant requires the use an (sic) assistive device whenever standing or walking.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1979 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964). (Exhibit 11F/72).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 26-36.)

On April 20, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's March 22, 2017 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 23, 2018. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin.,

466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff's pending motion argues that the ALJ's treatment of the medical opinion evidence constituted error.[3] (Pl.'s MSJ (ECF No. 16) at 8-14.[4]) The weight to be given to

---

[3] The court has reorganized plaintiff's claims for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

### A. Dr. Robert Froh

Plaintiff first challenges the ALJ's treatment of the opinion offered by plaintiff's treating physician, Dr. Robert Froh. (Pl.'s MSJ (ECF No. 16) at 10-11.) The ALJ acknowledged Dr. Froh's opinion, stating:

> Doctor Robert Froh, D.C., a treating care provider of the claimant noted that the claimant can lift 10 pounds occasionally and less than ten pounds frequently, stand and walk for less than two hours in an eight hour day, sit for less than two hours, never perform postural positions, requires the use of a cane, can occasionally reach, handle finger and feel, and requires the ability to change position every 15 minutes.

(Id. at 33.)

////

The ALJ afforded Dr. Froh's opinion "partial weight," finding the opinion "consistent with some of the longitudinal record," plaintiff's use of a cane, and the injury history of plaintiff's right hand. (Id.) However, the ALJ also noted that some of plaintiff's testimony was inconsistent with the limitations opined by Dr. Froh, concluding that plaintiff "was not as limited as Dr. Froh opined." (Id.)

In this regard, the ALJ noted that Dr. Froh opined that plaintiff "required the ability to change position every 15 to 20 minutes." (Id.) Dr. Froh also opined that plaintiff could "sit for less than two hours" of an eight-hour workday. (Id.) However, when asked at the hearing about the "type of things" plaintiff engaged in, plaintiff answered "[p]retty much, I just sit down and watch TV." (Id. at 52.) Plaintiff also stated that plaintiff sat for bathing, because standing was difficult. (Id.) From this testimony the ALJ could conclude that plaintiff spent more than two hours of an eight-hour workday sitting. And an ALJ may reject a treating physician's opinion were the opined restrictions are inconsistent with the plaintiff's admitted activities.[5] See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("the restrictions appear to be inconsistent with the level of activity that Rollins engaged in").

Accordingly, plaintiff is not entitled to summary judgment on the claim that the ALJ's treatment of Dr. Froh's opinion constituted error.

**B.     Treating Kaiser Therapists**

Plaintiff next challenges the ALJ's treatment of Global Assessment of Functioning ("GAF") scores provided by plaintiff's treating therapists. (Pl.'s MSJ (ECF No. 16) at 11.) A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "GAF scores are

---

[5] As noted *infra*, the court is cognizant of the error that can be caused by the use of general activities of daily living to reject plaintiff's claims of disability. Here, however, the ALJ was relying on a specific inconsistency between Dr. Froh's opinion and plaintiff's testimony.

typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

With respect to plaintiff's GAF scores, the ALJ stated:

> The claimant's Global Assessment of Functioning (GAF) scores ranging from 41-58 indicate that the claimant has moderate to significant symptoms.[6] The record as a whole contradicts the GAF scores regarding the claimant's ability to function in occupational and social settings. Contemporaneous evidence indicates the claimant had significant daily activities (as listed above), as well as substantially normal mental status examinations. Given the foregoing and that a GAF score only shows the claimant's mentality at a specific time, the undersigned gives little weight to these scores.

(Tr. at 29.)

As for the vague assertion that the "record as a whole contradicts the GAF scores",

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Moreover, the record does support the opined GAF's scores. In this regard, on May 26, 2015, plaintiff telephoned Kaiser Medical Group complaining that since being "shot accidentally on his hand by a friend" in September of 2014, plaintiff had been "not able to sleep, and gets up every hour, scared to go out, because he doesn't feel safe." (Tr. at 882.) A July 1, 2015 psychotherapy note from a Kaiser therapist reflects that plaintiff's mental status examination

---

[6] A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. "A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning.'" Garrison, 759 F.3d at 1003 n.4.

7

found plaintiff to be "tearful," "depressed and anxious," with a restricted affect. (Id. at 894.) A July 7, 2015 psychotherapy note found plaintiff to be "depressed and anxious," with restricted affect, distractible attention, impaired concentration, and impaired short-term memory. (Id. at 901.) A July 14, 2015 psychotherapy note reflects a mental status examination with similar findings, with an additional finding that plaintiff was "distractible." (Id. at 912.) A December 9, 2015 mental status examination again revealed similar findings. (Id. at 936.) In response, plaintiff's Trazodone and Paxil dosages were increased. (Id. at 937.)

Additionally, when dealing with psychiatric impairments, it must be remembered that

> a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).

Finally, with respect to the ALJ's vague references to "significant daily activities (as listed above)," it appears that the ALJ may have been referring to findings that plaintiff performed "necessary household activities," provided "some care to his children," "watches television and drives," and "was able to complete personal care without aid or difficulty[.]" (Tr. at 27-28.)

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). In this regard, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order

8

to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison, 759 F.3d at 1016 (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

For the reasons stated above, the court finds that the ALJ failed to provide a specific and legitimate reason for rejecting the GAF scores of plaintiff's treating physicians.

### C. Dr. G. E. Washington, Psy. D.

Finally, plaintiff challenges the ALJ's treatment of the examining opinion offered by Dr. G. E. Washington, a psychologist.[7] (Pl.'s MSJ (ECF No. 16) at 11.) The ALJ acknowledged Dr. Washington's opinion, stating:

> Doctor G.E. Washington, Psy.D., a consultative examiner, opined that the claimant is moderately limited in interacting and relating to co-workers and the public, and in maintaining regular attendance, but is mildly or not limited in his ability to perform simple and detailed tasks, maintain concentration, accept instructions, and perform work activities without special supervision.

(Tr. at 28.)

The ALJ afforded Dr. Washington's opinion only "partial weight." (Id.) The ALJ supported this determination by stating that Dr. Washington "only examined the claimant once and did not have access to [plaintiff's] medical records." (Id.) Examining physicians, however, routinely render opinions after conducting a single examination.

Moreover, the ALJ elected to afford "great weight" to the opinions of the "state agency psychological consultants[.]" (Id.) But these consultants never examined plaintiff. And their non-examining physician opinions were rendered prior to plaintiff's treatment with therapists at Kaiser—meaning the opinions were rendered without the ability to review plaintiff's complete medical record.[8] (Id. at 112, 115.)

---

[7] The opinions of a specialist regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.").

[8] Interestingly, the state agency consultants afforded Dr. Washington's opinion "Great Weight."

9

The ALJ also supported the decision to reject Dr. Washington's opinion by asserting that the opinion was "based off the claimant's subjective complaints," and was inconsistent with plaintiff's "activities of daily living[.]" (Id. at 28.) For the reasons discussed above, the vague and conclusory reference to plaintiff's activities of daily living is not a specific and legitimate reason to reject Dr. Washington's opinion.

Moreover, Dr. Washington's opinion was not based solely on plaintiff's subjective complaints, but on plaintiff's "symptoms, symptom history and overall presentation at the time" of the examination. (Id. at 472.) As a result of the examination, Dr. Washington observed that plaintiff "appeared irritated and anxious," with loud speech, and circumstantial thoughts. (Id. at 471.) Dr. Washington found that plaintiff answered "questions in an open and honest manner," without "exaggeration of symptoms," and found no "inconsistencies throughout the evaluation." (Id.) "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199-200 (9th Cir. 2008).

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing reason for rejecting Dr. Washington's opinion.[9]

////

////

---

(Tr. at 100, 113.) Plaintiff challenges the ALJ's decision to give significant weight to non-examining physicians who lacked plaintiff's complete medical record in a separate claim. (Pl.'s MSJ (ECF No. 16) at 13-14.) This error, however, is part of the ALJ's error to properly evaluate the medical opinion evidence.

[9] The ALJ's errors with respect to the GAF scores and Dr. Washington's opinion are particularly harmful given that they occurred at step two of the sequential evaluation. At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28). Here, at step two the ALJ found that plaintiff's mental impairments were not severe based on the erroneous rejection of the GAF scores and Dr. Washington's opinion. (Tr. at 27.)

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, plaintiff asks that this matter be remanded for further proceedings. (Pl.'s MSJ (ECF No. 16) at 14.) Plaintiff's request will be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 20) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

////

////

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: September 18, 2019

*[signature]*
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\turner1403.ord